***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before former Deputy Commissioner Hedrick and the briefs and oral arguments before the Full Commission. The appealing party has shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of former Deputy Commissioner Hedrick, with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Worker's Compensation Act at all relevant times.
2. The defendant was a duly qualified self insured.
3. An employee-employer relationship existed between the parties at all relevant times. The plaintiff was employed by defendant at its facility in Plymouth, North Carolina, from October 21, 1961.
4. Plaintiff was last injuriously exposed to asbestos during the plaintiffs employment with defendant, Weyerhaeuser Company, and specifically, that the plaintiff was exposed to asbestos for thirty (30) days within a seven month period, as set out in N.C. Gen. Statute §97-57.
5. Defendant has stipulated that plaintiff does suffer from an occupational disease, asbestosis, and further that he was diagnosed with asbestosis on May 8, 1997, by Dr. Darcey., The defendant further agrees that a member of the North Carolina Occupational Disease Panel confirmed this diagnosis and that these medical records are stipulated into evidence for consideration by the Industrial Commission.
6. Plaintiff's income during the fifty-two (52) weeks prior to his diagnosis on May 8, 1997, was $49,349.00, which is sufficient to produce the maximum compensation rate for 1997, $512.00. By separate stipulation by counsel for both parties on August 13, 2002. it is stipulated that plaintiffs wages were sufficient to earn the maximum compensation benefits available under the North Carolina Workers' Compensation Act in the year 2000, which was $588.00.
7. Plaintiff contends that he is entitled to an award of a 10% penalty pursuant to the provisions of N.C. Gen. Stat. § 97-12, and the defendant stipulated that should the claim be found compensable, the defendant would agree by compromise to pay an amount of 5% of all compensation, exclusive of medical compensation, as an award of penalty pursuant thereto.
8. The parties agreed further that should plaintiff be awarded compensation, the Commission may by order remove the plaintiff from further exposure pursuant to N.C. Gen. Stat. § 97-62-5(b).
9. The parties further agreed that should the Commission determine N.C. Gen. Stat. §§ 97-60 through 97-61.7 to be unconstitutional, additional testimony could be offered by the parties on the issues of loss of wage earning capacity and/or disability.
10. The parties agreed that the only contested issues for determination are:
 A. Does N.C. Gen. Stat. § 97-60 through § 97-61.7 apply to plaintiff's claim for benefits, and regardless, are these statutes in violation of the Constitutions of the United States and North Carolina?
 B. What benefits, monetary and/or medical, is plaintiff entitled to received, if any?
11. The parties submitted for consideration by the Commission the medical records and reports of plaintiff by the following physicians:
a. Dr. Dennis Darcey
b. Dr. Fred M. Dula
c. Dr. James Johnson
d. Dr. Phillip Lucas
e. Dr. Clinton Young
f. Dr. Robert Shaw
g. Dr. Allen Hayes
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was employed by defendant, Weyerhaeuser Company, at its facility in Plymouth, North Carolina, from October 20, 1961, until the date of the hearing before the Deputy Commissioner and continuing.
2. Defendant manufactures paper and paper products, including paper for crafts, bags, boxes and pulp for baby diapers. The approximate size of defendant's plant in Plymouth, North Carolina, is 3/4 of a mile long. The entire facility is built on approximately 350 acres and encompasses about 20 different buildings. The newest building was built in the 1960's. Defendant has approximately 1,500 employees at its facility.
3. There are two different types of boilers used at the facility. The first is a recovery boiler that is used to cook the wood pulp. The second type is a steam-producing boiler, which is used for energy and heat. There are a total of 5 paper making machines within the facility. In addition, there are hundreds of miles of steam pipes covered with asbestos insulation. The heat coming off the steam pipes is used to dry the wet pulp/paper. The boxes in which the insulation was stored were labeled as asbestos and much of the asbestos insulation is currently labeled with identifying stickers.
4. Plaintiff has held several different job positions during his 38 years of employment with defendant. In 1961, plaintiff worked "extra board," performing duties as needed throughout the plant. In 1965, he began working in the maintenance department where he has worked as a millwright, welder, and pipe fitter. He currently works in the preventative maintenance department. Throughout his employment, he was exposed to friable asbestos at various places throughout the plant and he inhaled asbestos fibers.
5. Plaintiff was heavily exposed to asbestos in the boiler room because the boilers and pipes were wrapped in friable asbestos insulation. As a welder working with the pipe fitters, plaintiff would use a hammer to knock off the asbestos-containing insulation, which would release dust into the air. He also used asbestos-based gloves and blankets to protect himself from being burnt when welding. While working as a millwright, plaintiff was exposed to asbestos while changing the asbestos-containing brake shoes on the paper machines.
6. Defendant did not provide plaintiff with a respirator to protect him against exposure to friable asbestos. He has suffered from progressive shortness of breath in the last four or five years and has difficulty climbing stairs.
7. Plaintiff was exposed to asbestos-containing materials on a regular basis for more than thirty working days or parts thereof inside of seven consecutive months from 1961 until his case was heard by the Deputy Commissioner.
8. The following medical records confirming the diagnosis of asbestosis were submitted for review of the Industrial Commission by counsel for the parties:
 A. The medical report of Dr. Dennis Darcey of the Division of Occupational Environmental Medicine of Duke University dated May 8, 1997. Plaintiff was exposed to asbestos over the course of his employment at Weyerhaeuser from 1961 to 1997 in Plymouth. North Carolina. The plant has five large paper machines and employs over 1,400 workers. From 1961 to 1963, plaintiff worked in the labor pool all over the mill and from 1963 to 1990 he worked in maintenance. Plaintiff was primarily involved in welding and pipe fitting up until 1990 when he went into preventive maintenance. During the course of his employment, plaintiff did not know much about asbestos and was not aware of the health hazards associated with asbestos. In his work as a welder and pipe fitter he was exposed to asbestos-containing insulation around ducts, pipes, caustic lines, steam lines, acid lines, and boilers. He was responsible for removing the asbestos-containing insulation material on the pipes and boilers that he repaired. During the course of his employment, defendant did not provide him with a respirator for protection against asbestos dust.
 B. It was the opinion of Dr. Darcey, and the Full Commission finds as fact, that plaintiff has a clinical diagnosis of asbestos related pleural disease and asbestosis. Dr. Darcey's conclusion was based on the history of significant exposure to asbestos with adequate latency to develop the disease; an ILO chest x-ray and Bread showing bi-basilar interstitial changes and mild bilateral thickening consistent with asbestosis; and a high resolution CT scan of the chest showing non-specific interstitial changes consistent with changes related to asbestosis.
 C. Plaintiff is at increased risk of developing lung cancer and mesothelioma as a result of his asbestos exposure, as opposed to non-exposed individuals.
 D. A CT scan and chest x-ray dated March 15, 1997, interpreted by Dr. Fred M. Dula of Piedmont Radiology in Salisbury, a radiologist and B-reader. It was his opinion, and the Full Commission finds as fact, that there were areas of interstitial abnormality in both lungs, including short, thickened interlobar lines extending to the pleural surfaces and parenchymal bands. In addition, there is slight pleural thickening on both sides, more evident on plain film than on CT. It was the overall impression of Dr. Dula, and the Full Commission finds as fact, that there were bibasilar interstitial changes and mild bilateral pleural thickening consistent with mild asbestosis given a history of asbestos exposure.
 E. It was the opinion of Dr. Phillip H. Lucas, a NIOSH Breader who also evaluated the March 15, 1997, chest film, and the Full Commission finds as fact, that there were bilateral interstitial fibrotic changes consistent with asbestosis in a patient who has had an adequate exposure history and latent period.
 F. Dr. Allen Hayes of Raleigh Internal Medicine also reviewed the March 15, 1997, chest film and indicated thereon that there were parenchymal abnormalities consistent with pneumoconiosis present.
 G. Dr. James Johnson of Piedmont Radiology in Salisbury, a B-reader, reviewed the March 15, 1997, chest x-ray and concluded there were parenchymal changes present consistent with a pneumoconiosis.
 H. Dr. Robert Shaw, a physician specifically assigned to medically monitor the employees of defendant, noted in his report dated March 31, 1998, that plaintiff had a mild chest x-ray abnormality with a profusion rating of 0/1.
 I. On January 28, 1999, the plaintiff was examined by Dr. Clinton D. Young, a member of the North Carolina Occupational Disease Panel. The plaintiff advised Dr. Young that he has smoked 1 to 1 1/2 packs a day from age 15 until quitting two months prior to his examination and has experienced some shortness of breath climbing steps. He also stated that he began working at Weyerhaeuser at age 18 in the labor pool in 1961 through 1965 when he started to work in maintenance, where he has remained. While in the labor pool, he worked in the boiler room where he believes there was asbestos insulation on all pipes and on the boilers themselves. His exposure was related to being in the area while others tore down and rebuilt boilers near him, releasing dust into the air. When he began in maintenance in 1965 he was more directly involved with tearing insulation off of pipes and being around others who were doing that work. Plaintiff describes this exposure as ongoing with active disruption of asbestos insulation around him occurring between one and seven days at a time. In 1990, his direct exposure to asbestos was reduced when he went into preventive maintenance.
 J. Dr. Young examined plaintiff, his chest x-ray films, the pulmonary function tests performed at Moses Cone Hospital, and the medical records that were provided by the parties. Based upon the plaintiffs sustained and repetitive occupational exposure to asbestos, his exam, and mildly abnormal chest x-ray with interstitial opacities consistent with occupational exposure to asbestos, it was Dr. Young's conclusion, and the Full Commission finds as fact, that plaintiff has pulmonary asbestosis. Plaintiff s occupational exposure put him at greater risk of contracting asbestosis than a member of the general public not so exposed. Additionally, plaintiff will need long-term supervision by his primary physician to watch for evidence of progressive asbestosis or development of cancer related to his combined exposures to tobacco and asbestos.
9. Plaintiff does suffer from the occupation diseases asbestosis and asbestos-related disease as a result of his many years of asbestos exposure while employed by the defendant. His pulmonary impairment is permanent and is likely to progress. Plaintiff would benefit from medical monitoring, evaluation, and some treatment in the future as a result of his asbestosis and asbestos-related pleural disease. Further, the medical monitoring is reasonably necessary due to his increased risk of developing lung and other asbestos-related cancers.
10. Plaintiff's wages were sufficient to earn the maximum compensation benefits available under the North Carolina Workers' Compensation Act in the year 2000, which was $588.00. Deputy Commissioner Hedrick ordered plaintiff removed from further exposure to asbestosis by his Opinion and Award filed May 16, 2000.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff contracted the occupational diseases of asbestosis and asbestos-related pleural disease as a result of his employment with defendant. N.C. Gen. Stat. §§ 97-53(24) and 97-62.
2. Plaintiff was last injuriously exposed to the hazards of asbestos dust while employed by defendant, and for as much as 30 days or parts thereof, within seven consecutive months, which exposure proximately augmented his asbestosis. N.C. Gen. Stat. § 97-57; Clark v. GrinnellIndustrial Piping, Inc., 141 N.C. App. 417, 539 S.E.2d 369 (2000); Haynesv. Feldspar Producing Co., 222 N.C. 163, 22 S.E.2d 275 (1942); Barber v.Babcock Wilcox Construction Company, 101 N.C. App. 564,400 S.E.2d 735 (1991).
 I
3. N.C. Gen. Stat. § 97-61.5 provides in pertinent part that following a first hearing determination by the Industrial Commission that a claimant has asbestosis, based upon either medical evidence or by agreement of the parties, the Commission "shall by order remove the employee from any occupation which exposes him to the hazards of asbestosis . . ." and that upon removal the employee shall be entitled to "weekly compensation equal to sixty-six and two-thirds percent of his average weekly wages . . . which compensation shall continue for a period of 104 weeks." Accordingly, the Commission hereby issues an Order of Removal. Id. The Order of Removal does not constitute an order removing plaintiff from his employment with defendant, but plaintiff is ordered removed from any occupational exposure to asbestos for the remainder of his employment.
4. While it has been determined that a retiree who is no longer employed by the asbestos-exposing industry is not entitled to an order of removal and the subsequent award because he no longer faces the possibility of exposure, see Austin v. General Tire, 354 N.C. 344,553 S.E.2d 680 (2001), in this case plaintiff remains in defendant's employ. It has long been recognized that the purpose of the order of removal is not only to stop continuing exposure of the employee to asbestos fibers, but also to ensure that the employee who continues to work avoids any future exposure. See Roberts v. Southeastern Magnesia andAsbestos Co., 61 N.C. App. 706, 301 S.E.2d 742 (1983). It has also long been recognized that the award of 104 weeks of compensation has the additional purpose to compensate the employee for the incurable nature of the disease. Honeycutt v. Carolina Asbestos Co., 235 N.C. 471,70 S.E.2d 426 (1952).
5. The legislative intent of Sections 97-61.1 through 97-61.7 of the North Carolina General Statutes is to promote workplace safety by encouraging employees to remove themselves from further injurious exposures. Removal from further exposure to the hazards of asbestos can be accomplished by removal from the hazard as opposed to removal from the employment. Austin v. General Tire, 141 N.C. App. 397, 540 S.E.2d 824
(2000), rev'd on other grounds, 354 N.C. 344, 553 S.E.2d 680 (2001);Roberts v. Southeastern Magesia and Asbestos Co., 61 N.C. App. 706,301 S.E.2d 742 (1983); N.C.G.S. § 97-53(28)(i);29 C.F.R. § 1910.134.
6. Pursuant to N.C. Gen. Stat. § 97-61.5, the weekly amount of plaintiffs 104 weeks of compensation is to be based upon his "average weekly wages before removal from the industry, but no more than the amount established annually to be effective October 1 as provided in G.S. § 97-29. . . ." The parties have stipulated that plaintiffs wages were sufficient to entitle him to the maximum compensation rate permitted under the Act for the year 2000, when plaintiff was first ordered removed. Therefore, plaintiff is entitled to 104 weeks of compensation as a result of the order of removal at the weekly benefit rate of $588.00. N.C. Gen. Stat. § 97-61.5; Roberts v. SoutheasternMagnesia and Asbestos Co., 61 N.C. App. 706, 301 S.E.2d 742 (1983).
7. The issue of the constitutionality of N.G. Gen. Stat. §§ 97-60et seq. has been raised by defendant and ruled upon by the North Carolina Court of Appeals. In Jones v. Weyerhaeuser Co., 141 N.C. App. 482,539 S.E.2d 380 (2000), disc. review denied, 353 N.C. 525, 549 S.E.2d 858
(2001), and in Clark v. ITT Grinnell Industrial Piping, Inc.,141 N.C. App. 417, 539 S.E.2d 369 (2000), the Court ruled unanimously that the provisions of N.C. Gen. Stat. § 97-61.5 are constitutional.
8. Plaintiff is entitled to have defendant pay for such medical expenses incurred or to be incurred as a result of plaintiff's asbestos related pleural disease and asbestosis as may be required to monitor, provide relief, effect a cure or lessen plaintiffs period of disability. N.C. Gen. Stat. §§ 97-25, and 97-59.
9. Plaintiff is entitled to undergo subsequent examinations as provided by law, pursuant to the provisions of N.C. Gen. Stat. §§97-61.1, et seq., and is further entitled to any additional benefits due to plaintiff, which shall be determined after additional examinations and hearings.
10. Defendant stipulated that, should the Industrial Commission determine that plaintiff contracted the occupational disease asbestosis during the course and scope of his employment with defendant, defendant would waive further proof needed under N.C. Gen. Stat. § 97-12 (that the injury is caused by the willful failure of the employer to comply with any statutory requirement) and, in compromise of this issue, would accept a 5% penalty against all compensation due other than medical compensation. The Industrial Commission has so determined and defendant's offer of a compromise 5% penalty is deemed appropriate.
 *********** ORDER OF REMOVAL
Plaintiff is hereby ordered removed from any occupation that further exposes him to the hazards of asbestos. N.C. Gen. Stat. § 97-61.5(b).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Defendant shall pay to plaintiff compensation for 104 weeks as a result of his contraction of asbestosis and asbestos-related pleural disease while employed by defendant and as a consequence of the Industrial Commission's Order of Removal, at a weekly rate of $588.00, commencing on May 16, 2000. Said sum shall be paid in a lump sum to plaintiff without commutation, subject to the attorney's fee approved herein.
2. Defendant shall pay an additional weekly sum of 5% of the weekly compensation awarded in Paragraph I above to plaintiff, which shall also be paid in a lump sum. As per agreement of the parties, defendant shall also pay a 10% late penalty pursuant to N.C. Gen. Stat. § 97-18.
3. Defendant additionally shall pay interest in the amount of 8% per annum on this award from the date of the initial hearing on this claim, December 13, 1999, until paid in full. The interest shall be paid in full to the claimant and is not subject to attorneys' fees. N.C. Gen. Stat. § 97-86.2.
4. Defendant shall pay all medical expenses incurred or to be incurred when bills for the same have been approved, in accordance with the provisions of the Act.
5. Plaintiff shall undergo additional examinations as provided by law.
6. A reasonable attorney's fee of 25% of the compensation due plaintiff as was awarded in paragraphs I and 2 above is approved for plaintiffs counsel. Defendant hall deduct 25% of the lump sum otherwise due plaintiff shall pay such 25% directly to plaintiffs counsel.
7. The Commission hereby retains jurisdiction in this matter to address the issue of permanent impairment, as plaintiff has not undergone the additional panel examination as required by law for such determination. Upon completion of such examinations, should the parties be unable to agree on what additional compensation, if any, is due, the parties may request a hearing before this Commission on this matter.
8. Defendant shall pay the costs of this proceeding.
 *********** ORDER REMANDING
This claim is hereby remanded to a deputy commissioner for further hearing, if necessary, following subsequent examinations as required under N.C. Gen. Stat. § 97-61 et seq. Plaintiffs eligibility for further indemnity compensation under the Act beyond the 104 weeks awarded herein and any other issues in controversy are hereby held in abeyance pending the outcome of further hearings.
This the 9th day of October 2002.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/__________________ BERNADINE S. BALANCE COMMISSIONER
DISSENTING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER